UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | 4:19-cr-00980-HEA-JMB |
| | ) | |
| v. | ) | |
| | ) | |
| HAITAO XIANG, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY TO DEFENDANT'S RESPONSE TO GOVERNMNET MOTION FOR PROTECTIVE ORDER FOR HIGHLY CONFIDENTIAL MATERIALS**

COMES NOW the United States of America by and through its attorneys, Tiffany Becker, Attorney for the United States for the Eastern District of Missouri, acting under authority conferred by 28 U.S.C. § 515, and Matthew T. Drake and Gwendolyn E. Carroll, Assistant United States Attorneys for said District, and replies to defendant Xiang's response to the Government's motion to seeking a protective order for highly confidential discovery materials.

In the defendant's March 19, 2020 Response to the Government's motion seeking a protective order governing Highly Confidential discovery materials – specifically, the trade secret at issue in this case – the defendant objects to the conditions in the Government's proposed order precluding the defendant from accessing the trade secret and requiring counsel and defense experts to access the trade secret in a secure space, specifically, in a government agency or office. Doc. No. 44.

Preliminarily, the United States notes that it remains willing and able, as it has been from the outset of this case, to provide defense counsel with the opportunity to review the trade secret to whatever extent defense counsel deems necessary, provided that said review takes place in a secure government space. The United States will make any reasonable accommodations that

defense counsel requires in order to access and review the white paper at issue in this matter, and, as described in the government's initial motion and reflected in the proposed order, the United States will also give any experts agreed upon by Monsanto/Bayer/TCC ("the company") every reasonable opportunity to review the trade secret.

**1. A Grand Jury Made a Probable Cause Determination that the Highly Confidential Materials at Issue Constitute a Trade Secret.**

The defendant contends that the government carries the burden of establishing that the materials at issue are a trade secret, but fails to cite any criminal case in support of that proposition. Doc. No. 44 at 2-3. The cases that the defendant does cite are civil cases, in which no probable cause finding had been made prior to the initiation of the litigation or the commencement of discovery. *Id.* (citing *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991); *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999)). Here, as the Court is aware, a Grand Jury has made a probable cause finding that the defendant "would and did carry out the conspiracy and effect its unlawful objects, that is the theft and possession of trade secret information owned by Monsanto and TCC, for the benefit of a foreign government and foreign instrumentality." Doc. No. 17 at ¶ 22. The Indictment returned by the Grand Jury describes, at length, the steps taken by Monsanto to protect its trade secret and the extensive research and development that went into the creation of the white paper that lies at the heart of this case. To the extent that the defendant contends, without legal support, that a finding must be made at the discovery phase in a criminal trade secret case as to whether the material at issue is or is not a trade secret before a protective order may be entered, such a finding has been made in this matter by a Grand Jury.

In his responsive pleading, the defendant contends that, unlike the in-house counsel in *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992), who was prohibited from

accessing the trade secret, he is not "is not employed with a company that is a direct competitor to an adverse party." Doc. No. 44 at 7. Although it is true that Monsanto/TCC is not a party in the present matter, they are the victim in this case, and the United States has an obligation, as clearly envisioned by Congress when passing 18 U.S.C. § 1835, to protect the rights of that victim. And, as the Indictment alleges and the discovery provided to defense counsel makes clear, the defendant was actively recruited by a competitor of the victim company, specifically, the Chinese Academy of Sciences, and has subsequently established a company in the People's Republic of China, using the technology he stole during his employment at Monsanto/TCC. For the defendant to argue that he, unlike in-house counsel in *Brown Bag*, does not occupy the position of a business competitor with the victim company strains credulity.

    **2. The Government's Proposed Protective Order Does Not Unduly Infringe the Defendant's Constitutional Rights.**

The defendant asserts that the Adam Walsh Act provides an inapposite framework for the constitutional requirements for discovery, stating that child exploitations cases are distinguishable from the present case, given that "a scientific white paper about agriculture . . . requires significant review by skilled experts to prepare a defense. There, graphic images of sexual exploitation of children that require nothing more than a cursory review to know they are illegal on their face. The cases are not the same." Doc. No. 44 at 9. Contrary to the defendant's assertion, child pornography cases often hinge on complex computer forensics, requiring extensive review of computer forensics by expert witnesses. There is no greater sophistication in the computer forensic analysis required in a child pornography case than there is in the present matter, and yet courts have routinely held that there is no substantial deprivation of a defendant's due process rights or right to counsel where defendant experts and attorneys must view material in a secure facility.

The defendant also objects that, because some of his attorneys are not located in the Eastern District of Missouri, "it would be extraordinarily burdensome to conduct frequent and extended travel to Saint Louis." Doc. No. 44 at 10. First, the United States notes that the defendant is, in fact, represented by counsel located in the Eastern District of Missouri. Attorney Eric Selig, of the firm Rosenblum Schwartz and Fry, PC, located in St. Louis, Missouri, remains entered as counsel for defendant Xiang. But even if the defendant were represented exclusively by out of state counsel, that would not alter the constitutional implications of requiring that his counsel review the trade secret in a secure government space. Even where counsel and experts had to travel cross-country in order to review evidence in a secure government facility, courts have explicitly rejected Fifth and Sixth Amendment challenges to the discovery provisions of the Adam Walsh Act. For example, in *United States v. O'Rourke*, 470 F. Supp. 2d 1049, 1058–59 (D. Ariz. 2007), defense counsel and defense experts had to travel from Ohio to Arizona to inspect evidence at a government facility. The defendant argued that this was "unduly costly" and raised various constitutional challenges, including concerns that his Fifth Amendment due process and Sixth Amendment rights were unduly abridged. *Id.* at 1058. In rejecting the defendant's arguments, the court stated that "the hardship of out-of-state counsel traveling to Arizona to view evidence generally does not implicate due process concerns" nor have denied defendant a fair trial. *Id.* at 1058–59. *See also United States v. Butts*, No. CR 05–1127–PHX–MHM, 2006 WL 3613364, *2 (D. Ariz. 2006) (rejecting defendant's due process and ineffective assistance of counsel arguments, stating that "when determining whether material is reasonably available to a defendant," and thus comporting with 5th and 6th amendment constitutional protections, "the applicable standard does not consider expense or location as relevant factors."); *United States v. Renshaw*, No. 1:05-CR-00165, 2007 WL 710239 (S.D. Ohio 2007) (holding that requiring the defense to travel to a

government facility "may inconvenience trial counsel and Defendant's experts, [but] does not preclude Defendant from preparing his case for trial," and thus did not present a constitutional violation); *United States v. Wright*, 625 F.3d 583, 614–17 (9th Cir. 2010), superseded by statute on other grounds as stated in *United States v. Mitchell*, 725 Fed. Appx. 544 (9th Cir. 2018) (unpublished) (holding that defense office's "budget, timing, and staffing problems" did not deprive defendant from adequately examining evidence at government facility and did not violate the Fifth Amendment due process clause nor Sixth Amendment compulsory process and effective assistance of counsel clauses); *United States v. Doane*, 501 F. Supp. 2d 897, 899–902 (E.D. Ky. 2007) (holding that additional time and expense required by travel from Kentucky to a government facility Indianapolis did not infringe upon defendant's constitutional rights).

Defendants charged in child exploitation cases are not accorded less due process protection than defendants charged under the Economic Espionage Act, and courts have repeatedly rejected due process and right to counsel challenges to discovery parameters very similar to those outlined in the Government's proposed protective order.  In this case, as in child exploitation cases, the United States has an obligation to protect the rights of the victim in this matter.  As indicated above, the United States will take every reasonable measure to ensure that both counsel and any experts who fall within the parameters of the proposed protective order are given sufficient access to the trade secret to enable a constitutionally sound defense of defendant Xiang.

WHEREFORE, based on the foregoing, the United States respectfully submits that the Protective Order submitted by the United States is "necessary and appropriate" to the preservation of the highly valuable intellectual property the defendant is alleged to have stolen from the victim company at the behest of the People's Republic of China.

Respectfully submitted,

TIFFANY BECKER
Attorney for the United States,
Acting Under Authority
Conferred By 28 U.S.C. § 515

*/s/ Gwendolyn E. Carroll*
Gwendolyn E. Carroll #4657003NY
Assistant United States Attorney
111 South 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-2200

*/s/ Matthew T Drake*
Matthew T. Drake #46499MO
Assistant United States Attorney
111 South 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 2, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

    */s/ Gwendolyn E. Carroll*
Gwendolyn E. Carroll #4657003NY
Assistant United States Attorney