**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.: 19 CR 980 |
| vs. | ) |
| | ) |
| HAITAO XIANG, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO BAYER'S MEMORANDUM
IN SUPPORT OF RESTITUTION ORDER**

Now comes the defendant, Haitao Xiang, by and through his undersigned attorney, and respectfully submits this response to Bayer's Memorandum in Support of Restitution Order (R. 166):

Bayer's failure to show why their attorneys' work was "necessary" during the government's investigation and prosecution of Mr. Xiang precludes them from recovering attorney's fees as part of restitution. Much of their memorandum, and the accompanying exhibits, is simply redundant of what this Court had already considered prior to deferring ruling on restitution and should be disregarded. *See* R. 147, 149. Although Bayer had every right to retain counsel in the present matter, they do not have an absolute right to get their costs reimbursed. As discussed in Mr. Xiang's initial submission opposing restitution, the Mandatory Victim's Restitution Act ("MVRA") is applied narrowly. *Lagos v. United States*, 138 S. Ct. 1684 (2018). For the sake of brevity, to forgo repetitiveness, and preclude waiver and forfeiture of arguments, Mr. Xiang adopts, reincorporates, and realleges all legal and factual

assertions and objections made in his supplemental objection to the PSR regarding restitution.  R. 147.  For all contained in Mr. Xiang's initial objection to restitution, his arguments at the April 7, 2022 sentencing hearing, and the reasons contained here, this Court must deny Bayer's request for restitution.

The crucial component contained in the MVRA for an alleged victim to recover costs is that they are "limited to *necessary* other expenses" that were "incurred during participation" in the government's investigation and prosecution.  *Lagos*, 138 S. Ct. at 1689 (emphasis provided).  Simply doing work one believes should be done during the government's investigation and prosecution is not enough.  Nor is it enough to do work that would otherwise be required of an alleged victim, or redundant and duplicative of the work done by the government.  And that is all that Husch Blackwell ("HB") did here.

HB fails to present any new evidence or argument that what they did on behalf of Bayer was "necessary" as contemplated by the MVRA.  Indeed, the exact fees that are being sought by Bayer in the instant matter were recently vacated by the Eighth Circuit, in light of *Lagos. See United States v. Carpenter*, 14-CR-205-RWS; 2017 WL 2813934, *3-5 (E.D. Mo. 2017) (excluding fees associated with work that was duplicative of United States Attorney's Offices, responding to defendant's subpoena, reviewing and analyzing investigation materials, preparing for client interviews and testimony, document production to government, and other legal expenses), *vacated by* 727 Fed. Appx 909, 910 (8th Cir. 2018) (vacating the narrow restitution order for legal fees all together in light of *Lagos*); *see also United States v. Cornelsen*, 893 F.3d

1086, 1091 (8th Cir. 2018) (recognizing *Lagos* abrogated Circuit precedent awarding legal fees and "[i]n light of *Lagos*, we vacate the portion of restitution order awarding $250,000.00 for the company's accounting and attorney's fees[.]"). Bayer provides no compelling reasons for this Court to go against Eighth Circuit precedent.

The only evidence provided by Bayer to support the "necessity" of HB's work is an attestation by an attorney from their firm. *See* R. 166, Exhibit 1. Within that document, only four paragraphs speak to the work HB did and why it supports a restitution order in this case: paragraphs 16, 17, 18, and 19. Notably absent from Bayer's submission is anything from the government supporting the notion that what HB did was necessary to the investigation and prosecution of Mr. Xiang, or even requested. Specifically, there is nothing in the attestation stating that but for HB's participation, the government could not have successfully investigated and prosecuted Mr. Xiang. Or what was actually requested by the government. Quite frankly, HB wanting this Court to believe that the work that they did on behalf of Bayer was "necessary" is insulting to not only to the United States Attorney's Offices for the Eastern District of Missouri, but the entire Counter-Espionage Section of the Department of Justice in Washington D.C. that oversaw this entire case.

*First*, HB wants this Court to believe that "legal research [conducted] at the outset of this matter to identify criminal statutes violated by Xiang and develop evidence supporting the government's investigation and prosecution of Xiang" was "necessary." *See* R. 166, Ex 1, ¶ 16. This is simply disingenuous. The Department of Justice is arguably the most powerful government agency in the United States,

3

prosecuting thousands of individuals every year across the country. The Eastern District of Missouri, alone, prosecutes hundreds of individuals every year without the input of a private law firm. It is laughable to think they need advice from a private law firm as to what charges to bring and what evidence to use to support those charges, let alone research relevant caselaw for them to use in prosecuting their case. Mr. Xiang would welcome an attestation or declaration from the government acknowledging that HB was "necessary" in their charging decisions and subsequent research of relevant caselaw, but such, in turn, would identify much bigger and prevalent issues within both the government and the charges brought in this case than just this sought-after restitution order.

*Second*, HB claims that their coordination with the government continued throughout litigation, involving extensive work with company representatives to address the loss calculation under the United States Sentencing Guidelines, and develop evidence and testimony reflecting the gravity of Xiang's actions and their consequences for Bayer. *See* R. 166, Ex. 1, ¶¶ 17, 19. But developing the factual basis is the government's responsibility. *See United States v. Nosal*, 884 F.3d 1024, 1048 (9th Cir. 2016) (excluding, pre-*Lagos*, legal fees for tasks normally performed by the prosecution because "the company's attorneys are not a substitute for the work of the prosecutor, nor do they serve the role of a shadow prosecutor."). And even if it is requested by the government, fees spent developing the factual record are excluded under the MVRA because they are not like the costs specifically listed in § 3663(b). *See United States v. Koutsostamatis*, 956 F.3d 301, 310 (5th Cir. 2020) (excluding

4

costs of a digital forensics team incurred in response to the government's request for help in investigating the offense because, as *Lagos* explains, the statute "says nothing about hiring lawyers or accountants or private investigators to carry out an investigation.").

*Third*, HB claims that responding to a Defense Rule 17 subpoena was a "necessary" part in their participation of the government's investigation and prosecution of Mr. Xiang. *See* R. 166, Ex. 1, ¶ 18. This may be their most disingenuous argument. Bayer was required by law to comply with a defense subpoena. If they believed otherwise, they could have moved to quash the subpoena—but they did not. How responding to a *defense* subpoena furthers a government investigation and prosecution remains a mystery. It was clearly not something requested by the government and is, without a doubt, excludable under the MVRA. *See Yu Xue*, 2021 WL 2433857, \*6 (finding, as an additional ground to deny restitution, that legal fees spent responding to the defendant's subpoenas and "litigation strategies and tactics" were not necessary expenses because there was no evidence that the "legal tasks [were] required or requested by the Government."); *see also Carpenter*, 727 Fed. Appx. at 910.

*Fourth*, HB asserts that their preparation of their victim impact statements, preparation of potential trial testimony, and developing factual record was "necessary." *See* R. 166 Ex. 1, ¶ 19. Again, developing the factual basis is the government's responsibility and not recoverable under the MVRA. *See United States v. Nosal*, 884 F.3d 1024, 1048 (9th Cir. 2016). And it is the government's job to

5

prepare witness testimony. *See United States v. Chan*, 2019 WL 3975579, *7 (D. Mass. 2019) (excluding restitution for witness preparation legal fees because "it is the responsibility of the government prosecutor, not private counsel."); *United States v. Haileselassie*, 668 F.3d 1033, 1036-37 (8th Cir. 2012) (holding that costs of investigative agencies that are "a voluntary expense of criminal investigation[s]" or "routinely incurred prosecuting criminal cases" are not recoverable under the MVRA.)

There are other fees incorporated in Bayer's submission (R. 166, Ex. 2) that fail to meet any sort of standard that is required to mandate restitution, such as attending court hearings where they were nothing more than a nonparticipating observer, reviewing Court orders and memorandum, contemplating state charges, internal document review (clearly excludable under *Lagos*), and other unnecessary work. They have not identified any law that supports restitution for such costs, likely because there is none. Yet again, they fail to specify what work was requested by the government or how the government believes it was necessary to investigate and prosecute, or that they could not have done without HB. The one thing that the attestation does make clear (R. 166, Ex. 1), is that not everything done by HB was at the government's request. Fortunately, the law does not recognize a restitution remedy for work done by attorneys for an alleged victim that was unilaterally decided by them without any request from the government—exactly what Bayer wants this Court to do.

To be fair, the government indicated at sentencing that it "did make repeated requests of [Bayer] to do various things that [they] wanted to put in [their] response

6

to investigate loss, a series of loss like R&D or the Defendant's knowledge of what was going on at the company, the marketing things that we have talked about." *See Transcript of Proceedings* (April 7, 2022), pg. 12. But that it was Bayer that "chose to go through counsel." *Id.*, pg. 13. The government did not make the preposterous claim—that Bayer wants this Court to believe—that they *needed* HB to help them research applicable charging statutes and sentencing law. That is simply a ridiculous premise that Bayer concocted in an effort to justify the attorney's fees they were obligated to pay. And Bayer makes clear in their submission that it was wholly their own decision to hire independent counsel, not at the request of the government. See, R. 166, pg. 9 ("Bayer hired independent counsel to help it participate in the Government's investigation"); pg.,12 ("it hired independent counsel to participate in the Government's. investigation and prosecution of Xiang"). At most, if restitution is ordered, it should be limited to cover the costs of assisting the government with the specific requests to calculate loss (there was no loss), nothing more.

Absent from anything submitted by Bayer is an explanation as to why anything that was requested by the government could not have been responded to internally by in-house counsel. Aside from the fact that time developing the factual record is not recoverable under the MVRA, it is unclear why Bayer believed that their in-house counsels were too incompetent or otherwise unable to respond to the limited inquiries made by the government. It seems that it would actually take less time and resources for Bayer to provide the government with the requested information that

7

was already in their possession through in-house counsel rather than hiring outside counsel to play catch-up to what Bayer already knew and possessed internally.

Certainly, Bayer had every right to hire outside counsel. And it may have even been in their best interest. That, however, does not give them the right to be reimbursed for their payments for legal services that they requested. The MVRA requires that the attorney's fees that are billed are "necessary" for the government to prosecute and investigate Mr. Xiang. Here, there were none. None of the work that Bayer seeks restitution for is recognized by the law. The work done by HB was mostly either duplicative of what the government was already doing or the law required them to do it. The remaining was simply unnecessary, in every sense of the word. To that end, although the work performed by HB may have given Bayer peace of mind, it is not recoverable under the MVRA. The government represents the rights of victims without the help of outside counsel in the vast majority of cases. The same could have been done here.

As to Bayer's argument that this Court has authority to order restitution as part of the conditions of supervised release, they have identified no law that gives this Court jurisdiction to do so at this juncture of the case. Mr. Xiang was sentenced on April 7, 2022 and various conditions of supervised release were ordered. They are reflected in judgment Order entered by this Court. R. 153. That judgment order has been appealed and is currently pending in the Eighth Circuit. R. 155. Ergo, at this time, this Court does not have jurisdiction to amend the conditions of supervised release to require restitution as requested by Bayer.

8

To be sure, the conduct Mr. Xiang openly and candidly accepted responsibility for was serious, but it resulted in no actual loss to Bayer. In addition to the term of imprisonment and collateral consequences faced by Mr. Xiang, this Court has already imposed a significant fine of $150,000.00 as part of Mr. Xiang's sentence. Doubling that financial burden to include the cost of Bayer hiring HB would result in a sentence that is not just or reasonable. Nor would be it supported by law. There is no doubt that HB did a lot of work on behalf of Bayer, but there is nothing in the record that indicates what the government specifically requested from Bayer, why they could not have done it without HB, or why or how it was necessary to promote the government's investigation and prosecution of Mr. Xiang.

Wherefore, for the reasons stated above, and those in his Objection to the Presentence Investigation Report (R. 147) and made orally during the April 7, 2022 sentencing hearing, defendant Haitao Xiang respectfully asks this Honorable Court deny Bayer's request for restitution.

Respectfully submitted,

/s/ Vadim A. Glozman_____
*Attorney for Haitao Xiang*

Vadim A. Glozman
LAW OFFICES OF VADIM A. GLOZMAN
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 726-9015

9

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 24, 2022, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: all Attorneys of record.

                                                    s/    Vadim A. Glozman